IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHANNA ROCHELL WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 18-0249-MU |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Shanna Rochell Waters brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 18. Upon consideration of the administrative record, Waters's brief, the Commissioner's brief, and oral argument presented at the February 6, 2019 hearing

before the undersigned Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Waters applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, on August 4, 2015, alleging disability beginning on July 28, 2015. (Tr. 139-45). Her application was denied at the initial level of administrative review on September 11, 2015. (Tr. 102-07). On September 24, 2015, Waters requested a hearing by an Administrative Law Judge (ALJ). (Tr. 110-11). Waters appeared at a hearing before the ALJ on April 3, 2017. (Tr. 31-58). The ALJ issued an unfavorable decision finding that Waters was not under a disability during the applicable time period on August 29, 2017. (Tr. 15-26). Waters appealed the ALJ's decision to the Appeals Council, and, on April 25, 2018, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

After exhausting her administrative remedies, Waters sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on July 30, 2018. (Docs. 10, 11). Both parties filed briefs setting forth their respective positions. (Docs. 13, 14). Oral argument was held before the undersigned Magistrate Judge on February 6, 2019. (Doc. 19). The case is now ripe for decision.

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 17. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II. CLAIMS ON APPEAL

Waters alleges that the ALJ's decision to deny her benefits is in error because the ALJ failed to order a consultative examination. (Doc. 13 at p. 1).

## III. BACKGROUND FACTS

Waters was born on July 21, 1971 and was 44 years old at the time she filed her claim for benefits. (Tr. 34). Waters alleged disability due to degenerative disc disease, back problems, fibromyalgia, arthritis, carpal tunnel in both hands, and diabetes. (Tr. 172). Although she was primarily in special education classes, she completed high school and obtained a graduation certificate. (Tr. 35-36; 156-57). She has worked as a sawmill worker, construction laborer, sewing machine operator, security gate guard, and level winder. (Tr. 36-38; 196-201). She testified that the problems with her back are the reason she left her job as a level winder where she had to stand on cement in steel toed shoes and the reason that she cannot work now. (Tr. 36, 39). Waters testified that she is able to bathe, dress, and groom herself. (Tr. 44-45). According to Waters, on a typical day, after showering, she makes herself something to eat, then works on doing her household chores. (Tr. 44). She testified that doing her household chores used to take her two hours, but because she cannot stand too long, it now takes her all day. (*Id.*). She can drive but does not because it causes pain and numbness in her legs. (Tr. 35). Her daughter drives her to church, to the store (where she shops for herself), and to watch her grandson play sports. (Tr. 45).

## IV. ALJ'S DECISION

After conducting a hearing, the ALJ made a determination that Waters was not under a disability at any time from July 28, 2015, the alleged onset date, through August

29, 2017, the date of the ALJ's decision, and thus, was not entitled to benefits. (Tr. 15-26). After considering all of the evidence, the ALJ made the following findings in her August 29, 2017 decision that are relevant to the issues presented:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she would need to be able to alternate positions at will between sitting and standing, and this could be accommodated without leaving the workstation.**
>
> * * *
>
> The claimant has sufficient evidence in the record to show that she has the severe impairments of degenerative joint disease, degenerative disc disease, fibromyalgia, diabetes with diabetic neuropathy, carpal tunnel syndrome, and obesity. The medical evidence documents the diagnoses of the impairments, that the impairments have endured for more than twelve months and that the impairments have had a significant impact on the claimant's ability to engage in work activities.
>
> [Review of the medical records]
>
> * * *
>
> The claimant's medically determinable impairments are expected to cause functional limitations; however, her limitations are accommodated in her residual functional capacity. The claimant's degenerative joint disease, degenerative disc disease, fibromyalgia, diabetes with diabetic neuropathy, carpal tunnel syndrome, and obesity are accommodated in her limitation to no more than light exertional level work with the ability to change positions at will while working. The claimant's x-rays close to the alleged onset date showed only mild degenerative disc disease.
>
> She has more recently been shown to have some bulging discs in her back but no surgery has been performed or recommended. She takes tramadol for pain and reports that it lowers her pain levels (Exhibit 16F). Her clinical exams do not show any reduction in strength or reflexes. She is able to walk without an assistive device and has only recently been reported to have even a slightly antalgic gait (Exhibit 12F). It is noted that subsequent records from September 2016 reflected that the claimant reported that she was walking, stretching, and performing her home exercises and was not having much pain at all (Exhibit 12F); she reported

using a treadmill when last seen by her orthopedist in March 2017 (Exhibit 15F). The claimant underwent a right carpal tunnel release and reports good relief from symptoms. She was to be scheduled for a left release but has not gone forward with the procedure yet (Exhibit 8F). There is in any case no indication that the condition would substantially limit ability to perform gross and fine manipulation at the light level of exertion. The claimant has never been tested by a rheumatologist for rheumatoid arthritis and is diagnosed with fibromyalgia apparently based on her reports of pain in multiple joints. She is still able to perform normal household chores and prepares complete meals on a daily basis. The records do not show persistent difficulty in controlling her blood sugar levels. She has not reported significant symptoms or problems related to diabetes and has had no acute care for high glucose levels. The claimant has been obese for many years but has not had any limitations given by any physicians due to this condition. In general, the records reflect a good response to medical treatment.

The stated residual functional capacity is based on the findings reported by orthopedic and primary care sources, with some consideration given to the claimant's report of her symptoms and limitations. It appears that her current treatment regimen has successfully addressed her complaints with adequate pain control. The sit/stand option should accommodate any ongoing symptoms. With regard to carpal tunnel syndrome, it appears that, although the findings were more severe on the left, the claimant was more symptomatic on the right and underwent a successful surgery less than 12 months from the first recorded complaints of any hand symptoms. There is nothing in the record suggesting that the claimant's carpal tunnel symptoms are of such severity as to require restrictions beyond that of light activity.

* * *

The objective medical evidence, the appropriately weighted medical opinions, and the claimant's subjective complaints during the relevant period when taken in proper context support the claimant's residual functional capacity assessment. In view of all of the factors discussed above, the limitations on the claimant's capacities contained in her residual functional capacity are warranted, but no greater or additional limitations are justified.

(Tr. 21-24).

## V. DISCUSSION

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). The claimant must establish disability on or before her date last insured ("DLI"). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In her decision in Waters's case, the ALJ first determined that her DLI was December 31, 2018. (Tr. 15). She next began the process of applying the five-step sequential evaluation to Waters's claim. At step one, the ALJ found that Waters had not engaged in SGA since her alleged onset date (July 28, 2015). (Tr. 17). Therefore, she proceeded to an evaluation of steps two and three. After evaluating all medical records and Waters's testimony, the ALJ found that Waters had severe impairments of degenerative joint disease, degenerative disc disease, fibromyalgia, diabetes mellitus, diabetic neuropathy, carpal tunnel syndrome, and obesity, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of

a listed impairment. (Tr. 17-20). The ALJ concluded that Waters had the RFC to perform light work, except that she would need to be able to alternate positions at will between sitting and standing, and this could be accommodated without leaving the workstation. (Tr. 21-24). She further concluded that Waters was capable of performing past relevant work as a gate guard, and therefore, found that Waters was not disabled within the meaning of the Act during the period at issue, which was July 28, 2015, through the date of the ALJ's decision, August 29, 2017. (Tr. 26).[2]

Waters contends that the ALJ erred in this case because the ALJ did not order a consultative examination to obtain a doctor's opinion regarding her physical capacity. (Doc. 13 at p. 4). While a claimant has the burden of proving disability, the ALJ has a concomitant duty to develop a full and fair record. *See Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). An ALJ's affirmative duty to develop a full and fair record, in certain cases, "extends to obtaining a consultative examination when the same would be of benefit in the administrative process." *Waits v. Astrue*, CV 12-J-2371-NE, 2013 WL 625311, at *4 (N.D. Ala. Feb. 20, 2013) (citing 20 C.F.R. §§ 404.1517; 416.917); *accord Cox v. Astrue,* 2012 WL 4008953, at *5 (N.D. Ala. Sept. 12, 2012) ("The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.") (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citing, in turn, *Ford v. Sec'y of Health & Human*

---

[2] The ALJ found, alternatively, that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 25-26). The ALJ stated that this finding was based on VE testimony that there were other jobs Waters could perform; however, there is no such testimony in the hearing transcript. Accordingly, this alternative finding will not be considered by the Court.

*Servs.*, 659 F.2d 66, 69 (5th Cir. Unit B 1981))). "The [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). "In determining whether it is necessary to remand a case for development of the record, [a court should consider] 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Salazar v. Comm'r of Soc. Sec.*, 372 F. App'x 64, 67 (11th Cir. 2010) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam)). "It is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence that the regulations require an ALJ to order a consultative examination." *Rivers v. Astrue*, 901 F. Supp. 2d 1317, 1328 (S.D. Ala. 2012).

The Commissioner argues that substantial evidence supported the ALJ's finding regarding Waters's RFC and that no additional examinations or medical opinions were necessary. The Court notes that approximately 200 pages of medical records are contained in the transcript, and the ALJ's decision demonstrates that she reviewed and considered these records. (Tr. 244-432; 22-24). The medical records reflect that while Waters complained of a great amount of pain in spring and summer of 2015, after starting a medication regimen toward the latter part of 2015, her pain has, for the most part been under control since early 2016. *See* Tr. 380, 405, 425-32.

At her visit with Dr. Cockrell at Alabama Orthopaedic Clinic on March 1, 2017, she reported that her pain level was a 1/10. (Tr. 424). The record from that date reflected that she had a history of chronic back pain since approximately 2013; that she

reported that the pain was sharp and burning in the mid to bilateral low back and that she had occasional left leg pain; that the symptoms were increased with activities such as sweeping and mopping, as well as prolonged standing; that the symptoms decreased with sitting or lying down, as well as with the use of medications; that she had noted intermittent increases in her pain with prolonged sitting; that she had recently begun to exercise on her treadmill; that a lumbar MRI on November 24, 2015 showed disc bulges from L2-3 to L5-S1 with bilateral foraminal encroachment at L2-3 and L3-4, mild to moderate at L4-5, and moderate at L5-S1; and that physical examination showed tenderness over the L5-S1 area, equal and well maintained strength and range of motion in the lower extremities, without symptom exacerbation on testing, and bilateral posterior leg pain with bilateral sitting straight leg raise. (Tr. 424-25). Dr. Cockrell's assessment was lumbago (pain in the muscles and joints of the lower back), chronic pain syndrome, myofascial pain syndrome, and intervertebral disc disorders with radiculopathy in the lumbar region. (Tr. 425). His instructions were to continue with medication management, consider physical therapy, continue her home exercise program, and continue her weight loss efforts. (Tr. 426).

In addition to the extensive medical documentation, the ALJ also considered Waters's own reports regarding limitations caused by her back pain. For example, Waters testified that she is able to bathe, dress, and groom herself; that on a typical day, after showering, she makes herself something to eat, then works on doing her household chores (cleaning, laundry, ironing); that doing her household chores used to take her two hours, but because she cannot stand too long, it now takes her all day; that she cannot sweep or mop; that she can stand to do dishes if she props one of her feet

up on a stool; that she can drive but does not because it causes pain and numbness in her legs so her daughter drives her to church, to the store (where she shops for herself), and to watch her grandson play sports; that she walks for exercise; that she can walk about ½ mile or for about twenty minutes at a time; and that she cooks full meals daily for dinner. (Tr. 43-45; 180-95).

After considering the medical evidence and Waters's reports and testimony regarding her abilities, the ALJ found that Waters had the RFC to perform light work except that she would need to be able to alternate positions at will between sitting and standing and that this could be accommodated without leaving the work station. (Tr. 21). Having reviewed the entire transcript, the Court finds no conflict, ambiguity, or other insufficiency in the medical evidence that would prevent the ALJ from making a well-supported and reasoned decision concerning her RFC. Therefore, the Court concludes that no consultative examination was necessary and the ALJ did not err by failing to order one.

## **CONCLUSION**

It is well established that this Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's decision that Waters is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff Shanna Rochell Waters benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **1st** day of **July, 2019**.

                                         s/P. BRADLEY MURRAY
                                         **UNITED STATES MAGISTRATE JUDGE**